## CASE NO. 23-4583(L), 23-4592

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

AMIR GOLESTAN (23-4583)
and
MICFO, LLC (23-4592),

*Defendants-Appellants.*

———————————

On Appeal From The United States District Court
For The District Of South Carolina At Charleston

———————————

## OPENING BRIEF OF APPELLANTS

———————————

<br>

Jeremy A. Thompson
OFFICE OF THE
FEDERAL PUBLIC DEFENDER
1901 Assembly Street
Suite 200
Columbia, SC 29201
803-765-5077
jeremy_thompson@fd.org

*Counsel for Appellant*
  *Amir Golestan (23-4583)*

Richard C. Klugh
LAW OFFICE OF
RICHARD C. KLUGH
40 NW 3rd Street
PH1
Miami, FL 33128
305-536-1191
klughlaw@gmail.com

*Counsel for Appellant*
  *MICFO, LLC (23-4592)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... v

STATEMENT OF SUBJECT MATTER AND
    APPELLATE JURISDICTION ...................................................... 1

ISSUES PRESENTED FOR REVIEW ........................................................ 2

STATEMENT OF THE CASE AND FACTS ................................................ 3

    A.  The rapid expansion of the Internet resulted in the depletion of IP
        addresses, causing a secondary market for IP addresses to develop ................... 3

    B.  In 2014, ARIN declines Micfo's request for 256,000 IPv4 addresses. Mr.
        Golestan obtains additional addresses by submitting requests for IP
        addresses through nonexistent entities. Years later, Mr. Golestan sells
        some of the IP addresses on the secondary market ............................... 5

    C.  In 2019, the government indicts Mr. Golestan and Micfo for wire fraud.
        The government argued the property Mr. Golestan and Micfo defrauded
        was ARIN's "exclusive right and ability to control the distribution of IP
        addresses." .......................................................................... 6

    D.  Mr. Golestan enters bankruptcy and is divested of his ownership interest
        in Micfo ............................................................................. 7

    E.  In 2021, Mr. Golestan and Micfo begin a bench trial but plead guilty on
        the second day of trial. In 2023, Mr. Golestan and Micfo move to
        withdraw their pleas on several bases. The district court denies the
        motion and imposes sentence ................................................. 8

SUMMARY OF ARGUMENTS ............................................................. 12

ARGUMENT ................................................................................................. 14

I.   The district court erred in refusing to permit Mr. Golestan and Micfo
     to withdraw their pleas of guilty based on the Supreme Court's
     intervening decision in *Ciminelli v. United States*, 598 U.S. 306 (2023),
     as the government explicitly premised criminal liability on ARIN's
     "right … to control" the distribution of IP addresses ................................. 14

STANDARD OF REVIEW ......................................................................... 14

DISCUSSION .......................................................................................... 15

   A.   The Supreme Court has limited the reach of the wire fraud
        statute to traditional property rights. The "right to control"
        assets is not a traditional property right ................................................. 15

   B.   The government prosecuted Mr. Golestan and Micfo under a
        "right to control" theory of liability predicated on ARIN's
        "exclusive right and ability to control the distribution of IP
        addresses." ................................................................................................. 17

   C.   The district court abused its discretion in denying the motion
        to withdraw the plea ................................................................................. 18

        1.   Mr. Golestan and Micfo credibly asserted their legal
             innocence ........................................................................................... 18

        2.   Mr. Golestan and Micfo offered credible evidence that their
             pleas of guilty were not knowing .................................................... 20

        3.   There was no significant delay between the entry of the
             pleas and the filing of the motion to withdraw the pleas.............. 20

        4.   Mr. Golestan and Micfo had the close assistance of
             competent counsel ............................................................................ 21

        5.   Withdrawal will not prejudice the government and will not
             waste judicial resources .................................................................. 21

II.   The district court violated Fed. R. Crim. P. 11(b)(1)(O) by failing to advise Mr. Golestan of the immigration consequences of his guilty plea and abused its discretion in refusing to permit Mr. Golestan to withdraw his guilty plea on that basis ............................................................ 23

III.  Mr. Golestan was denied the effective assistance of counsel due to defense counsel's failure to advise him of the immigration consequences of his guilty plea........................................................ 23

      STANDARD OF REVIEW .................................................................... 23

      DISCUSSION ......................................................................................... 24

      A.   District courts and defense attorneys must advise defendants of the immigration consequences of guilty pleas................................. 25

      B.   Mr. Golestan is subject to denaturalization as a result of his guilty plea ........................................................................................ 27

      C.   The district court's failure to advise Mr. Golestan of the immigration consequences of his guilty plea violated Rule 11(b)(1)(O)........................................................................................ 29

      D.   Defense counsel's failure to advise Mr. Golestan of the immigration consequences of his guilty plea constituted ineffective assistance of counsel ...................................................... 32

           1.   Defense counsel's performance was deficient .............................. 33

           2.   Defense counsel's deficient performance prejudiced Mr. Golestan ........................................................................................ 35

IV.   Micfo's guilty plea must be vacated where there was no valid authorization for its entry.................................................................... 37

      STANDARD OF REVIEW .................................................................... 37

      DISCUSSION ......................................................................................... 37

CONCLUSION .................................................................... 42

CERTIFICATE OF COMPLIANCE.......................................................................44

# TABLE OF AUTHORITIES

## Cases

*Boykin v. Alabama,*
   395 U.S. 238 (1969) ................................................................. 40

*Brady v. United States,*
   397 U.S. 742 (1970) ................................................................. 41

*Carpenter v. United States,*
   484 U.S. 19 (1987) ................................................................... 16

*Ciminelli v. United States,*
   598 U.S. 306 (2023) ......................................................... *passim*

*Cleveland v. United States,*
   531 U.S. 12 (2000) ................................................................... 16

*Farhane v. United States,*
   77 F.4th 123 (2d Cir. 2023) ................................................... 34

*Fedorenko v. United States,*
   449 U.S. 490 (1981) ................................................................. 28

*In re Rothstein Rosenfeldt Adler, P.A.,*
   No. 11-61338-CIV-COHN, 2011 WL 2620187 (S.D. Fla. July 1, 2011) .............. 39

*INS v. St. Cyr,*
   533 U.S. 289 (2001) ................................................................. 26

*Jordan v. De George,*
   341 U.S. 223 (1951) ................................................................. 28

*Kelly v. United States,*
   140 S. Ct. 1565 (2020) ............................................................ 16

*Ku v. AG U.S.,*
   912 F.3d 133 (3d Cir. 2019) ..................................................... 28

*Lee v. United States,*
   582 U.S. 357 (2017) ........................................................... 25, 36

*Marrama v. Citizens Bank of Massachusetts,*
   549 U.S. 365 (2007) ................................................................. 40

*McNally v. United States,*
 483 U.S. 350 (1987) ............................................................... 16, 17

*Meyer v. Branker,*
 506 F.3d 358 (4th Cir. 2007) ................................................ 25-26

*Padilla v. Kentucky,*
 559 U.S. 356 (2010) ................................................ 10, 25, 26, 33

*Rodriguez v. United States,*
 730 F. App'x 39 (2d Cir. 2018) .................................................. 34

*Schneiderman v. United States,*
 320 U.S. 118 (1943) ................................................................ 24, 31

*Strickland v. Washington,*
 466 U.S. 668 (1984) ................................................................ 24, 26

*United States v. Ataya,*
 884 F.3d 318 (6th Cir. 2018) ................................................ 31, 32

*United States v. Austin,*
 No. 20-4521, 2021 WL 5984902 (4th Cir. Dec. 16, 2021) ........................................ 37

*United States v. Binday,*
 804 F.3d 558 (2d Cir. 2015) ...................................................... 17

*United States v. Cline,*
 286 F. App'x 817 (4th Cir. 2008) ......................................... 19, 24

*United States v. Cocivera,*
 104 F.3d 566 (3d Cir. 1996) ................................................. 41, 42

*United States v. Delfino,*
 510 F.3d 468 (4th Cir. 2007) .................................................... 29

*United States v. Diaz,*
 No. 23-4087 (4th Cir. Mar. 28, 2024) ...................................... 28

*United States v. Dyess,*
 478 F.3d 224 (4th Cir. 2007) ............................................... 14, 23

*United States v. Fisher,*
 477 F.2d 300 (4th Cir. 1973) .............................................. 24, 33

*United States v. Freeman,*
  24 F.4th 320 (4th Cir. 2022) ............................................................ 24, 33

*United States v. Frye,*
  402 F.3d 1123 (11th Cir. 2005) ........................................................ 41

*United States v. General,*
  278 F.3d 389 (4th Cir. 2002) ............................................................ 37

*United States v. Gillion,*
  704 F.3d 284 (4th Cir. 2012) ........................................................ 16-17

*United States v. Gray,*
  405 F.3d 227 (4th Cir. 2005) ............................................................ 16

*United States v. Guerra,*
  401 F. App'x 746 (4th Cir. 2010) ..................................................... 37

*United States v. Jean-Baptiste,*
  395 F.3d 1190 (11th Cir. 2005) ........................................................ 28

*United States v. Lambey,*
  974 F.2d 1389 (4th Cir. 1992) ...................................................... 14, 23

*United States v. Lockhart,*
  947 F.3d 187 (4th Cir. 2020) ........................................................ 20, 22

*United States v. Mandello,*
  426 F.2d 1021 (4th Cir. 1970) .......................................................... 33

*United States v. Moore,*
  931 F.2d 245 (4th Cir. 1991) ........................................................ 15, 23

*United States v. Suarez,*
  664 F.3d 655 (7th Cir. 2011) ............................................................ 28

*United States v. Swaby,*
  855 F.3d 233 (4th Cir. 2017) ............................................................ 35

*United States v. Teng Jiao Zhou,*
  815 F.3d 639 (9th Cir. 2016) ............................................................ 28

*United States v. Thompson-Riviere,*
  561 F.3d 345 (4th Cir. 2009) ............................................................ 19

*United States v. Vonn,*
  535 U.S. 55 (2002) ............................................... 27

*United States v. White,*
  458 F. App'x 281 (4th Cir. 2011) ........................... 18, 19

*United States v. Yearwood,*
  863 F.2d 6 (4th Cir. 1988) ...................................... 26

## Statutes

8 U.S.C. § 1101 ...................................................... 28

8 U.S.C. § 1182 ...................................................... 28

8 U.S.C. § 1451 ...................................................... 28

18 U.S.C. § 981 ...................................................... 39

18 U.S.C. § 1343 .............................................. *passim*

18 U.S.C. § 1349 ...................................................... 31

18 U.S.C. § 1425 ........................................... 28, 29, 35

18 U.S.C. § 2461 ...................................................... 39

18 U.S.C. § 3231 ...................................................... 1

18 U.S.C. § 3571 ...................................................... 40

18 U.S.C. § 3663A ...................................................... 39

18 U.S.C. § 3742 ...................................................... 1

28 U.S.C. § 1291 ...................................................... 1

## Other Authorities

Fed. Judicial Ctr., Benchbook for U.S. District Court Judges (6th ed. 2013) ....... 37, 38

Fed. R. Crim. P. 11 ................................................ *passim*

## <u>STATEMENT OF SUBJECT MATTER</u>
## <u>AND APPELLATE JURISDICTION</u>

The basis for jurisdiction in the district court is 18 U.S.C. § 3231, which provides in pertinent part that the district court shall have original jurisdiction, exclusive of state courts, of all offenses against the laws of the United States.

Mr. Golestan timely filed a notice of appeal from his criminal judgment on September 14, 2023. JA628. Micfo, LLC ("Micfo") timely filed a notice of appeal from its criminal judgment on September 22, 2023. JA629. Jurisdiction of this Court is authorized by 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## <u>ISSUES PRESENTED FOR REVIEW</u>

### I.

Whether the district court improperly refused to permit Mr. Golestan and Micfo to withdraw their pleas of guilty following the Supreme Court's decision in *Ciminelli v. United States*, 598 U.S. 306 (2023), which held the "right to control" theory of wire fraud cannot form the basis for a conviction under 18 U.S.C. § 1343?

### II.

Whether the district court violated Fed. R. Crim. P. 11(b)(1)(O) by failing to advise Mr. Golestan of the immigration consequences of his guilty plea and abused its discretion in refusing to permit Mr. Golestan to withdraw his plea based on its Rule 11(b)(1)(O) violation?

### III.

Whether Mr. Golestan was denied the effective assistance of counsel due to his attorneys' failure to advise him of the immigration consequences of his plea?

### IV.

Whether Micfo's guilty plea was validly entered in the absence of authorization, where a federal bankruptcy court had granted authority for the company to a bankruptcy trustee and where Mr. Golestan conceded at the plea hearing that he was not an owner and occupied an employee role as manager, thus lacking authority to bind the company to financial obligations or criminal conviction absent trustee approval.

## STATEMENT OF THE CASE AND FACTS

Mr. Golestan is an Iranian-born entrepreneur whose family progressively fled Iran to Dubai, United Arab Emirates, for several years following the 1979 Iranian Revolution. *See* JA645. In 1999, while in Dubai, Mr. Golestan dropped out of high school to found Micfo. *See* JA647. Micfo provided cloud platforms to internet providers and other businesses, requiring Internet Protocol ("IP") addresses. Ultimately, Mr. Golestan moved to the United States and incorporated Micfo here. He sought citizenship and became a naturalized citizen on February 13, 2018. *See* JA645. The charges against Mr. Golestan and Micfo stemmed from their efforts to obtain IP addresses from the American Registry for Internet Numbers ("ARIN") using fictitious entities dubbed Micfo's "Channel Partners."

A.    **The rapid expansion of the Internet resulted in the depletion of IP addresses, causing a secondary market for IP addresses to develop.**

In order to connect to the Internet, a device, such as a computer or a smartphone, must first connect to a network's IP address. The device then communicates with other devices on the Internet, such as a website, by sending information from its network's IP address to the recipient's IP address. IP addresses, therefore, are similar to home addresses in that just as a piece of mail has both a return address and a delivery address, communication on the Internet has both a host address and a delivery address. *See* JA59-60.

For decades, the Internet grew using Internet Protocol version 4 ("IPv4") to create new IP addresses. IPv4 uses 32-bit addresses, which means that it is limited to $2^{32}$ addresses, or 4,294,967,296 unique addresses. *See* JA58-59. As it became clearer that this would be an insufficient number of IP addresses to meet global demand, Internet Protocol version 6 ("IPv6") was developed, which uses 128-bit addresses, resulting in $2^{128}$ addresses, or 340,282,366,920,938,463,463,374,607,431,768,211,456 unique addresses. *See* JA59. Even after the deployment of IPv6, however, IPv4 addresses remained in high demand due to their compatibility with existing networks and infrastructure, which were designed to work with IPv4 addresses, whereas IPv6 addresses required modifications to networks in order to serve the same function as IPv4 addresses.

IP addresses—both IPv4 and IPv6 addresses—are administered worldwide through five regional registries. *See* JA73. The regional registry for the United States, Canada, and some Caribbean countries, is ARIN. *See* JA72-73. For an American company to obtain access to IP addresses, the company must submit a request to ARIN for allocation. *See* JA74-75. ARIN then reviews the submission and determines whether to grant or deny the request. *See* JA75-76. If the request is granted, then ARIN authorizes the company to access the IP addresses and use the addresses for its network or networks. *See* JA76. ARIN does not sell the IP addresses; instead, access is given freely following approval, though there is a fee to apply for allocation of IP

addresses. *See* JA160-161. ARIN also approves all transfers of IP addresses from entity to entity. *See* JA129-130.

As the pool of IPv4 addresses dried up in the early-to-mid 2010s, ARIN began requiring requestors to provide more significant justifications for new IP addresses. *See* JA76-80. Due to their scarcity, a secondary market also developed where an entity could transfer its access to IPv4 addresses for approximately $10-$30 per address, subject to ARIN's approval of the transfer. *See, e.g.*, JA110-111; JA226-228.

**B.** **In 2014, ARIN declines Micfo's request for 256,000 IPv4 addresses. Mr. Golestan obtains additional addresses by submitting requests for IP addresses through nonexistent entities. Years later, Mr. Golestan sells some of the IP addresses on the secondary market.**

In 2011, Micfo began requesting IPv4 addresses from ARIN. JA85. Micfo represented it was reassigning the addresses it received from ARIN to "Channel Partners," which were companies that were purportedly using the addresses provided by Micfo. JA85. These Channel Partners, however, were nonexistent entities created by Mr. Golestan, and their officers were fictitious individuals. JA85; *see also* JA437.

While ARIN initially approved these requests, ARIN declined Micfo's request for 256,000 IP addresses in 2014, concluding Micfo could not justify a need for such a significant number of addresses. JA85-86. After ARIN declined Micfo's request, the Channel Partners made their own separate requests for IP addresses, stating that Micfo was pulling its existing addresses back. JA86; *see also* JA117. ARIN approved

those requests. JA86-87. Collectively, Micfo and the Channel Partners received access to approximately one million IP addresses. *See* JA637-638.

Years later, Mr. Golestan sold access to several blocks of IPv4 addresses in three separate transactions for nearly three-and-a-half million dollars using third-party brokers. *See* JA231-234; JA273-275. ARIN prevented an additional transfer, which was valued at over six million dollars, from occurring. *See* JA215-217.

C.    **In 2019, the government indicts Mr. Golestan and Micfo for wire fraud. The government argued the property Mr. Golestan and Micfo defrauded was ARIN's "exclusive right and ability to control the distribution of IP addresses."**

In 2019, the government indicted Mr. Golestan and Micfo for twenty counts of wire fraud in violation of 18 U.S.C. § 1343. The indictment alleged Mr. Golestan and Micfo "did devise and intend to devise a scheme and artifice to defraud and to obtain property by means of false and fraudulent pretenses, representations, and promises," but did not explain what the government meant by "property." JA23. Each count described a Channel Partner request for IPv4 addresses from ARIN or an assignment of IPv4 addresses to the Channel Partner by ARIN. JA20-31.

Mr. Golestan and Micfo moved to dismiss the indictment. JA32-39. They argued IP addresses were not "property" within the meaning of § 1343 because IP addresses "are services, not property." JA35. They noted "IP address resources are allocated or leased by [regional registries] to companies pursuant to a registry services

6

agreement" and that companies, therefore, cannot "own" an IP address as the authority to administer the IP address always remains with the regional registry. JA35.

In response, the government argued Mr. Golestan and Micfo obtained property from ARIN because "ARIN's control over and right to assign IP addresses is … a property right." JA45. The government contended "Golestan and Micfo defrauded ARIN into assigning IPv4 addresses to non-existent companies that were actually controlled by Golestan." JA46. By defrauding ARIN in this manner, Mr. Golestan and Micfo deprived ARIN from exercising its "exclusive right and *ability to control* the distribution of IP addresses." JA46 (emphasis added); *see also* JA46 ("Golestan and Micfo divested ARIN of its exclusive right and ability to assign IPv4 addresses at its discretion and in accordance with its policies."). The district court denied the motion to dismiss, concluding Mr. Golestan and Micfo deprived ARIN from its exclusive use of the IP addresses. JA50-53.

### D.  Mr. Golestan enters bankruptcy and is divested of his ownership interest in Micfo.

Attorney Kerry Culpepper testified in the bench trial proceedings that a bankruptcy trustee had been appointed for Micfo and controlled the entity as of 2020. JA523. Attorney Culpepper explained that the trustee became the owner of Micfo and that the trustee had "modified the Micfo operating agreement as the controlling entity in 2020." JA524. Thereafter, at the plea hearing, the district court confirmed, this time from codefendant Mr. Golestan, that Mr. Golestan had been divested both of his

ownership interest in Micfo and of his position as the company's Executive Director, although Mr. Golestan had a non-owner managerial position. JA438. The bankruptcy proceedings are reflected in *In re Amir Golestan Parast*, No. 19-05657-HB, Dkt. No. 38, Bankr. (Charleston, SC).

E.     **In 2021, Mr. Golestan and Micfo begin a bench trial but plead guilty on the second day of trial. In 2023, Mr. Golestan and Micfo move to withdraw their pleas on several bases. The district court denies the motion and imposes sentence.**

In 2021, Mr. Golestan and Micfo proceeded to a bench trial. Mr. Golestan was the only representative present for Micfo. Following two days of testimony, both Mr. Golestan and Micfo pleaded guilty as charged to all twenty wire fraud counts. During the district court's colloquy with Mr. Golestan regarding Mr. Golestan's understanding of the consequences of his plea, the district court asked Mr. Golestan about his citizenship status, to which Mr. Golestan responded, "I'm a naturalized United States citizen." JA430. The district court did not inquire further and did not advise Mr. Golestan of any immigration consequences of his plea. Additionally, the district court asked Mr. Golestan about his ability to enter the plea on behalf of Micfo:

> THE COURT: Now I've gone through—what was your title with Micfo?
>
> THE DEFENDANT: I was the Executive Director. However, initially, when I filed for Chapter 11 personal bankruptcy, I was later voluntary converted it into Chapter 7. And as a result of the conversion, the hundred percent

8

> membership interest became the interest of the bankruptcy state.
>
> THE COURT: Well—
>
> THE DEFENDANT: And now I have been essentially elected as the manager of the company.
>
> THE COURT: Okay. And you have the capacity to plead the corporation guilty, do you not?
>
> THE DEFENDANT: Yes, Your Honor.

JA438. The district court then asked Mr. Golestan if he was "pleading Micfo guilty to all 20 counts," to which Mr. Golestan responded, "correct, Your Honor." JA439.

In 2023, Mr. Golestan and Micfo moved to withdraw their pleas, asserting several bases for relief. JA450-452. Both Mr. Golestan and Micfo argued their "actions … do not violate federal law," citing the Supreme Court's decision in *Ciminelli*. JA451. Mr. Golestan argued there were flaws in both the district court's Fed. R. Crim. P. 11 colloquy and defense counsel's representation "about the possibility of denaturalization as a result of his guilty plea." JA451. Micfo argued "Mr. Golestan has been told that he might not have had the ability to act on behalf of Micfo because he was only a manager/employee and not a member or officer of the company" at the time of the guilty plea. JA451.

The district court denied the motion. JA462-466. Regarding Mr. Golestan's denaturalization argument, the district court concluded Mr. Golestan could not be denaturalized and that Rule 11(b)(1)(O) applies only to noncitizens, so "there was no

need to inform him that he was subject to deportation if he entered a guilty plea since that is plainly not the law." JA464. Regarding the *Ciminelli* argument, the district court concluded Mr. Golestan and Micfo "were charged and tried under traditional wire fraud principles, and the *Ciminelli* decision has no impact on the lawfulness of their convictions." JA465. The district court described the "right to control" theory as one "exclusively utilized in the Second Circuit." JA464. Despite the undisputed record that Golestan had no ownership, much less a controlling, interest in Micfo, and that Golestan served only in a subordinate role to the bankruptcy trustee, the district court deemed Golestan to be authorized to enter a guilty plea to the twenty counts of the indictment. JA438. Regarding Mr. Golestan's ability to enter the plea on Micfo's behalf, the district court concluded "no person or entity has asserted on Micfo's behalf that the Defendant Golestan lacked the authority to enter the plea on behalf of the entity." JA465 n.1.

Mr. Golestan and Micfo subsequently filed a motion to reconsider the district court's order denying the motion to withdraw the plea, presenting additional arguments for the withdrawal. JA467-480. In particular, Mr. Golestan asserted, through counsel who had represented him at his plea, that counsel had failed to advise him of the immigration consequences of his plea in contravention of *Padilla v. Kentucky*, 559 U.S. 356 (2010). JA467-471. The district court denied this motion as well, concluding the motion "simply rehashes the arguments already made, considered, and rejected by the Court." JA490.

10

Mr. Golestan and Micfo appeared for sentencing in September 2023. At this proceeding, the district court sentenced Mr. Golestan to sixty months' imprisonment with two years of supervised release to follow. The district court sentenced Micfo to a thirty-day term of probation. The district court filed its judgments for both defendants on September 14, 2023. JA602-627.

Mr. Golestan filed a timely notice of appeal on September 14, 2023. JA628. Micfo timely filed its notice of appeal on September 22, 2023. JA629.

## SUMMARY OF ARGUMENTS

The district court committed several reversible errors in refusing to permit Mr. Golestan and Micfo to withdraw their guilty pleas. Principally, the district court failed to recognize that *Ciminelli* invalidated the government's basis for prosecution: that Mr. Golestan and Micfo deprived ARIN of its intangible "right … to control" the allocation of IP addresses. JA46. Since "the right-to-control theory cannot form the basis for a conviction under the federal fraud statutes," their guilty pleas and judgments must be vacated. *Ciminelli*, 598 U.S. at 316.

Regarding Mr. Golestan specifically, the district court failed to advise him that there may be adverse immigration consequences as a result of his plea as required by Fed. R. Crim. P. 11(b)(1)(O). The district court erred in refusing to permit Mr. Golestan to withdraw his plea based on that failure because the district court wrongfully concluded it was not required to give the warning and that Mr. Golestan faced no adverse immigration consequences from his plea. To the contrary, Rule 11(b)(1)(O)'s warning must be given without regard for an individual's citizenship status. *See* Fed. R. Crim. P. 11(b)(1)(O) advisory committee's note to 2013 amendment. Moreover, Mr. Golestan faces significant adverse immigration consequences as his guilty plea exposes him to denaturalization and potential removal from this country—where many of his immediate family members, including his children, live—to his native country of Iran—a country he and his family fled when

he was a child. Accordingly, the district court abused its discretion in refusing to permit Mr. Golestan to withdraw his plea on this basis as well.

Regarding Micfo specifically, the record plainly shows that Golestan had no ownership interest in the company, that he had lost his prior position as Executive Director, and that a bankruptcy trustee was in complete control, to the extent that the trustee had modified the Micfo operating agreement to reflect the divestment of Golestan. There was no basis to deem Golestan authorized to enter a guilty plea on Micfo's behalf, nor was he so authorized. The Micfo guilty plea is therefore invalid and should be vacated.

Finally, Mr. Golestan's defense counsel was ineffective for failing to advise him of the immigration consequences of his plea. Such advice was required by *Padilla*. There is a reasonable probability he would have gone to trial had he known his conviction would expose him to denaturalization given the terrifying prospect of eventual removal to Iran. Vacatur of his conviction and remand for a new trial is warranted.

## ARGUMENT

I.    **The district court erred in refusing to permit Mr. Golestan and Micfo to withdraw their pleas of guilty based on the Supreme Court's intervening decision in *Ciminelli v. United States*, 598 U.S. 306 (2023), as the government explicitly premised criminal liability on ARIN's "right … to control" the distribution of IP addresses.**

### STANDARD OF REVIEW

Fed. R. Crim. P. 11(d)(2)(B) permits a defendant to withdraw a plea of guilty prior to sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." "When a defendant enters a plea of guilty and later seeks to withdraw it, the defendant bears the burden of demonstrating that withdrawal should be granted." *United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007). "The decision to permit the defendant to withdraw a plea is discretionary and our review is limited to the question of whether the district court abused its discretion." *United States v. Lambey*, 974 F.2d 1389, 1393 (4th Cir. 1992) (en banc).

"Courts typically consider a variety of factors in determining whether a defendant has met his burden" of demonstrating that withdrawal of a guilty plea should be granted, including

> (1) [W]hether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6)

14

> whether it will inconvenience the court and waste judicial
> resources.

*United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991).

## DISCUSSION

The district court abused its discretion in refusing to permit Mr. Golestan and Micfo to withdraw their guilty pleas. The government explicitly premised their criminal liability on ARIN's "exclusive right and ability to control the distribution of IP addresses." JA46. Their "fraud" was to "divest[] ARIN of its exclusive right and ability to assign IPv4 addresses at its discretion and in accordance with its policies." JA46. This theory of liability is "unmoored from the federal fraud statutes' text" and is "inconsistent with the structure and history of the federal fraud statutes." *Ciminelli*, 598 U.S. at 315. Accordingly, this Court should vacate the district court's judgment and remand with instructions to permit Mr. Golestan and Micfo to withdraw their guilty pleas.

**A.    The Supreme Court has limited the reach of the wire fraud statute to traditional property rights. The "right to control" assets is not a traditional property right.**

The federal wire fraud statute prohibits the use of a "scheme or artifice to defraud" through wires to "obtain[] money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. "[T]he 'money or property' requirement … limit[s] the 'scheme or artifice to defraud' element because the 'common understanding' of the words 'to defraud' when the statute was

15

enacted referred 'to wronging one in his property rights.'" *Ciminelli*, 598 U.S. at 312 (quoting *Cleveland v. United States*, 531 U.S. 12, 19 (2000)). Consequently, the government "must prove not only that wire fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'" *Id.* (quoting *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020)).

In 1987, the Supreme Court limited the reach of the federal fraud statutes[1] to traditional property rights rather than intangible rights such as "the intangible right of the citizenry to good government." *McNally v. United States*, 483 U.S. 350, 356 (1987). In reversing the petitioners' convictions in *McNally*, the Supreme Court noted that the district court did not charge the jury that "it must find that the Commonwealth was deprived of control over how its money was spent." *Id.* at 360.

Seizing upon that language in *McNally*, "several other circuits … concluded that the mail and wire fraud cover fraudulent schemes to deprive victims of their rights to control the disposition of their own assets." *United States v. Gray*, 405 F.3d 227, 234 (4th Cir. 2005) (collecting cases from the Second, Fifth, Sixth, Seventh, Eighth, Tenth, and D.C. Circuits). This Court joined those circuits in *Gray* by finding liability where a defendant had "interfere[d] with [the fraud victims'] ability to dispose of their own assets in the proper manner." *Id.* at 235; *see also United States v. Gillion*, 704 F.3d 284,

---

[1] "The mail and wire fraud statutes share the same language in relevant part." *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987).

16

295 (4th Cir. 2012) (citing *Gray* for the "holding that depriving a company of its

'intangible right to control the disposition of its assets' constitutes mail fraud").

Last year, the Supreme Court rejected the "right to control" theory of liability

in *Ciminelli*. The Supreme Court concluded "[t]he right to control theory cannot be

squared with the text of the federal fraud statutes, which are 'limited in scope to the

protection of property rights.'" *Ciminelli*, 598 U.S. at 314 (quoting *McNally*, 483 U.S.

360). The "right to control" theory protects an "intangible interest[] unconnected to

property": the victim's "'right to control its assets by depriving it of information

necessary to make economic decisions.'" *Id.* at 313 (quoting *United States v. Binday*, 804

F.3d 558, 570 (2d Cir. 2015)). Consequently, "[t]he right to valuable economic

information needed to make discretionary economic decisions is not a traditional

property interest" and federal criminal liability does not lie when an individual

deprives another of that information. *Id.* at 316.

**B.  The government prosecuted Mr. Golestan and Micfo under a "right to control" theory of liability predicated on ARIN's "exclusive right and ability to control the distribution of IP addresses."**

The government explicitly prosecuted Mr. Golestan and Micfo under a "right

to control" theory of liability. Within a few months of being charged, Mr. Golestan

and Micfo moved to dismiss the indictment because "IP addresses … cannot be

owned and are not property." JA38. In response, the government argued Mr.

Golestan and Micfo deprived ARIN "the exclusive *right … to control* the distribution of

IP addresses." JA46 (emphasis added). The government further argued "Golestan and Micfo divested ARIN of its *exclusive right and ability to assign IPv4 addresses* at its discretion and in accordance with its policies." JA46 (emphasis added). This right—ARIN's right to control the distribution of IP addresses—is the "property" Mr. Golestan and Micfo "obtained … by means of their fraudulent scheme." JA46.

Consequently, the government could not have been clearer in its theory of criminal liability. According to the government, the property interest at issue was ARIN's intangible "right … to control the distribution of IP addresses." JA46. That intangible right is not a protected property right under § 1343 following *Ciminelli*.

### C.  The district court abused its discretion in denying the motion to withdraw the plea.

Consideration of the *Moore* factors demonstrates the district court abused its discretion in denying Mr. Golestan and Micfo's motion to withdraw their pleas based on *Ciminelli*. All six factors weigh heavily in their favor.

### 1.  Mr. Golestan and Micfo credibly asserted their legal innocence.

The most significant *Moore* factor is the credible assertion of legal innocence. *See, e.g., United States v. White*, 458 F. App'x 281 (4th Cir. 2011) (reversing and remanding based solely on this factor without considering the other *Moore* factors). It is the defendant's burden "to credibly assert his legal innocence: that is, to present evidence that (1) has the quality or power of inspiring belief … and (2) tends to defeat the elements in the government's *prima facie* case or to make out a successful

affirmative defense." *United States v. Thompson-Riviere*, 561 F.3d 345, 354 (4th Cir. 2009) (internal quotation marks and citations omitted).

Here, *Ciminelli* repudiates the government's theory of criminal liability. There can be no clearer example of legal innocence. *See, e.g.*, *White*, 458 F. App'x at 283 (granting relief because "White is legally innocent of the offense of conviction"). While "a defendant is not required to provide conclusive proof of innocence" in order to withdraw a guilty plea, Mr. Golestan and Micfo have done so. *United States v. Cline*, 286 F. App'x 817, 821 (4th Cir. 2008).

The district court was incorrect to conclude otherwise. While the district court found Mr. Golestan and Micfo "were charged and tried under traditional wire fraud principles," the district court did not identify what those principles were. JA465. It would be difficult to do so, given the government's explicit "right … to control" theory of liability. JA46. Additionally, the district court erroneously concluded "the 'right to control' theory of wire fraud" was "an approach exclusively utilized in the Second Circuit." JA464. As explained above, this Court adopted that approach in *Gray*, a fact noted by the Supreme Court in *Ciminelli*. *See Ciminelli*, 598 U.S. at 313 n.3. Consequently, the district court abused its discretion by failing to understand both the "right … to control" basis for the prosecution and that *Ciminelli* changed the law in this circuit regarding that theory's validity.

**2.      Mr. Golestan and Micfo offered credible evidence that their pleas of guilty were not knowing.**

Mr. Golestan and Micfo's pleas of guilty were unknowing because they were made under the prevailing law at the time of their pleas. When their pleas of guilty were entered on November 16, 2021, *Gray*'s adoption of the "right to control" theory of liability was the law of the land. That was no longer true following the Supreme Court's decision in *Ciminelli*. Accordingly, "[a]t the time [Mr. Golestan and Micfo] entered [their] plea[s], no one in the courtroom, including [Mr. Golestan and Micfo], [their] counsel, the government, or the [district] judge, understood the essential elements of the" wire fraud offense. *United States v. Lockhart*, 947 F.3d 187, 196 (4th Cir. 2020) (en banc). This "wholesale misunderstanding of the law the time of [the] plea" renders their pleas unknowing. *Id.*

**3.      There was no significant delay between the entry of the pleas and the filing of the motion to withdraw the pleas.**

Mr. Golestan and Micfo pleaded guilty on November 16, 2021, and filed their first motion to withdraw their pleas on April 26, 2023. While this is a period of approximately eighteen months, Mr. Golestan and Micfo did not delay the filing of the motion to withdraw the plea because it was premised on *Ciminelli. Ciminelli* was argued on November 28, 2022, and decided on May 11, 2023—approximately two weeks *after* the filing of the motion to withdraw the plea. Consequently, Mr. Golestan and Micfo swiftly moved to withdraw their pleas as soon as it became apparent the basis for the government's prosecution was legally unsound.

20

**4.     Mr. Golestan and Micfo had the close assistance of competent counsel.**

While Mr. Golestan asserts his counsel was ineffective with regard to other aspects of the representation, as will be discussed in greater detail below, Mr. Golestan and Micfo had competent counsel with regard to this issue. Soon after indictment, defense counsel identified a flaw in the government's theory of liability by arguing that traditional property rights were not implicated by the fraud alleged by the government. *See* JA36 ("[T]he facts pled in the Indictment fail to establish that Defendants fraudulently obtain[ed] 'property' as required for an offense under § 1343."). As soon as it became clear the government's rejoinder to this argument—that ARIN's "right … to control the distribution of IP addresses," JA46—may be legally unsound, defense counsel filed a motion to withdraw their guilty pleas. *See* JA450-452. Consequently, Mr. Golestan and Micfo had the close assistance of competent counsel on this issue.

**5.     Withdrawal will not prejudice the government and will not waste judicial resources.**

Finally, Mr. Golestan and Micfo were prosecuted on an invalid basis of criminal liability. Withdrawal of their pleas, therefore, will not prejudice the government and will not waste judicial resources because the government has no interest in maintaining an invalid conviction and judicial resources are not wasted by righting a substantial legal wrong which has resulted in Mr. Golestan's incarceration.

21

********************

The government grounded its prosecution in ARIN's "right … to control the distribution of IP addresses." JA46. "[T]he right-to-control theory is not a valid basis for liability under § 1343." *Ciminelli*, 598 U.S. at 309. Mr. Golestan and Micfo, therefore, were prosecuted on an invalid basis of liability. This Court should "vacate" Mr. Golestan's and Micfo's "plea[s] and conviction[s]." *Lockhart*, 947 F.3d at 197.

II.   **The district court violated Fed. R. Crim. P. 11(b)(1)(O) by failing to advise Mr. Golestan of the immigration consequences of his guilty plea and abused its discretion in refusing to permit Mr. Golestan to withdraw his guilty plea on that basis.**

III.  **Mr. Golestan was denied the effective assistance of counsel due to defense counsel's failure to advise him of the immigration consequences of his guilty plea.**

## STANDARD OF REVIEW

Fed. R. Crim. P. 11(d)(2)(B) permits a defendant to withdraw a plea of guilty prior to sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." "When a defendant enters a plea of guilty and later seeks to withdraw it, the defendant bears the burden of demonstrating that withdrawal should be granted." *Dyess*, 478 F.3d at 237. "The decision to permit the defendant to withdraw a plea is discretionary and our review is limited to the question of whether the district court abused its discretion." *Lambey*, 974 F.2d at 1393.

"Courts typically consider a variety of factors in determining whether a defendant has met his burden" of demonstrating that withdrawal of a guilty plea should be granted, including

> (1) [W]hether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Moore*, 931 F.3d at 248.

23

"The fourth *Moore* factor is whether the defendant had close assistance of competent counsel." *United States v. Cline*, 286 F. App'x 817, 822 (4th Cir. 2008). This factor essentially asks whether a defendant can meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984): whether "counsel's performance fell below an objective standard of reasonableness and that, in the absence of counsel's errors, it was reasonably probable the defendant would not have pled guilty and would have proceeded to trial." *Cline*, 286 F. App'x at 822. An ineffective assistance of counsel claim made on direct appeal is reviewed de novo, and this Court "will reverse only if it '*conclusively appears in the trial record itself* that the defendant was not provided … effective representation.'" *United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022) (en banc) (quoting *United States v. Fisher*, 477 F.2d 300, 302 (4th Cir. 1973) (emphasis in *Freeman*).

## DISCUSSION

The consequences of denaturalization are "more serious than a taking of one's property, or the imposition of a fine or other penalty," and "[i]t would be difficult to exaggerate [citizenship's] value and importance." *Schneiderman v. United States*, 320 U.S. 118, 122 (1943). This is particularly true for Mr. Golestan—an Iranian national whose family was forced to flee that country in the years following the Iranian Revolution. *See* JA645. Yet neither the district court nor defense counsel advised Mr. Golestan of the significant potential immigration consequences of his guilty plea. The district court's failure to do so violated Fed. R. Crim. P. 11(b)(1)(O). That failure, in turn,

24

resulted in the district court abusing its discretion when it denied Mr. Golestan's motion to withdraw because the district court made two errors of law. First, the district court erroneously concluded "a naturalized American citizen is not subject to denaturalization and deportation following a felony conviction." JA464. Second, the district court erroneously concluded Rule 11(b)(1)(O) applies only to noncitizens. *See* JA464 ("Since Defendant Golestan was a naturalized American citizen there was no need to inform him that he was subject to deportation if he entered a guilty plea since that is plainly not the law."). Defense counsel's failure to "inform her client whether his plea carries a risk of deportation" rendered her performance constitutionally deficient. *Padilla*, 559 U.S. at 374. Mr. Golestan would not have pleaded guilty given the "paramount importance" this issue had for him. *Lee v. United States*, 582 U.S. 357, 370 (2017). This Court should vacate Mr. Golestan's guilty plea and judgment due to these failures.

### A. District courts and defense attorneys must advise defendants of the immigration consequences of guilty pleas.

Prior to the Supreme Court's decision in *Padilla*, most courts applied a direct/collateral consequences dichotomy when evaluating a defendant's claim that defense counsel was ineffective for failing to give advice on the consequences of a guilty plea. "Direct consequences have a definite, immediate, and largely automatic effect on the range of the defendant's punishment. A consequence is collateral when it is uncertain or beyond the direct control of the court." *Meyer v. Branker*, 506 F.3d

358, 368 (4th Cir. 2007) (quotation marks and citations omitted). Most courts, including this Court, concluded immigration consequences fell into the "collateral" consequences side of the dichotomy such "that an attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel." *United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988); *see also Padilla*, 559 U.S. at 365 n.9 (collecting cases).

In *Padilla*, the Supreme Court rejected this dichotomy, noting that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*, 466 U.S. at 689." *Padilla*, 559 U.S. at 365. Instead, the Supreme Court "recognized that '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" *Id.* at 368 (quoting *Immigr. and Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 322 (2001) (further quotation marks and citation omitted)). The Supreme Court, accordingly, held that defense attorneys are required to advise clients of the deportation consequences of a plea, and that where "the deportation consequence is truly clear … the duty to give correct advice is equally clear." *Id.* at 369.

In the wake of *Padilla*, Rule 11 was amended to require district courts to advise defendants "that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O). While the text of Rule 11(b)

26

is clear that this warning "must" be given, any ambiguity as to whether it must be given to a citizen is resolved by the Advisory Committee's Note adopting Rule 11(b)(1)(O). *See United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002) ("In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed."). In adopting this provision, the Advisory Committee noted that it "concluded that the most effective and efficient method of conveying this information is to provide it to *every* defendant, *without attempting to determine the defendant's citizenship*." Fed. R. Crim. P. 11(b)(1)(O) advisory committee's note to 2013 amendment (emphasis added). As such, "[t]he amendment mandates a generic warning, not specific advice concerning the defendant's individual situation." *Id.* Consequently, district courts, like defense attorneys, must now advise defendants that a guilty plea may carry immigration consequences, though district courts do not share the defense attorney's further duty to give advice regarding the specific consequences that may flow from the guilty plea.

    **B.**    **Mr. Golestan is subject to denaturalization as a result of his guilty plea.**

    Mr. Golestan's guilty plea subjects him to denaturalization and potential subsequent removal from this country. The "[f]ailure to comply with any" "congressionally imposed prerequisites to the acquisition of citizenship" "renders the certificate of citizenship 'illegally procured' and naturalization that is unlawfully

procured can be set aside" by prosecution pursuant to 18 U.S.C. § 1425. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) (quoting 8 U.S.C. § 1451(e)). One such requirement is that the alien be of "good moral character," 8 U.S.C. § 1101(f), and have not been "convicted of" or have not "committed" any "crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Wire fraud is a crime of moral turpitude. *See Jordan v. De George*, 341 U.S. 223, 232 (1951) ("[T]he decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude."); *Ku v. Att'y Gen.*, 912 F.3d 133, 143 (3d Cir. 2019) ("[W]e see no need to revisit the long-held tenet that fraud crimes—including wire fraud—are crimes involving moral turpitude."). Moreover, denaturalization can occur where an alien had only committed—and had not yet been convicted of—the crime while the alien's naturalization application was pending. *See, e.g.*, *United States v. Jean-Baptiste*, 395 F.3d 1190 (11th Cir. 2005); *United States v. Suarez*, 664 F.3d 655 (7th Cir. 2011); *United States v. Zhou*, 815 F.3d 639 (9th Cir. 2016). Indeed, this Court recently heard argument in a case where the government secured denaturalization on that basis. *See* Oral Argument, *United States v. Diaz*, No. 23-4087 (4th Cir. Mar. 28, 2024).

Mr. Golestan became a naturalized citizen on February 13, 2018. *See* JA645. The indictment charged Mr. Golestan with twenty counts of wire fraud, all but one of which predated February 13, 2018. *See* JA26-27. Consequently, by virtue of his guilty plea, Mr. Golestan admitted he committed nineteen acts of moral turpitude prior to

28

naturalization. As a result, he is subject to denaturalization through prosecution

pursuant to § 1425.

### C. The district court's failure to advise Mr. Golestan of the immigration consequences of his guilty plea violated Rule 11(b)(1)(O).

The district court abused its discretion when it refused to permit Mr. Golestan

to withdraw his guilty plea because it committed two errors of law. *See United States v.*

*Delfino*, 510 F.3d 468, 470 (4th Cir. 2007) ("A district court abuses its discretion when

it … commits an error of law."). This Court should vacate Mr. Golestan's plea and

the district court's judgment.

First, the district court categorically concluded "a naturalized American citizen

is not subject to denaturalization and deportation following a felony conviction."

JA464. As discussed above, that conclusion is simply wrong—while not every felony

conviction may result in denaturalization, a naturalized citizen can be denaturalized if

that citizen committed a crime of moral turpitude prior to obtaining citizenship. Since

Mr. Golestan pleaded guilty to nineteen such crimes, he is subject to denaturalization.

Second, the district court concluded Rule 11(b)(1)(O) did not require it to

advise a citizen of the immigration consequences of a plea. *See* JA464. Again, as

discussed above, that conclusion was also wrong. Rule 11(b)(1)(O) says nothing about

limiting the advice to only citizens; instead, it mandates that "the court *must* inform

the defendant of, and determine that the defendant understands … that, if convicted,

a defendant who is not a United States citizen may be removed from the United

States, denied citizenship, and denied admission to the United States in the future."
Fed. R. Crim. P. 11(b)(1)(O) (emphasis added). The Advisory Committee's Note
adopting Rule 11(b)(1)(O) furthers this mandate, directing district courts to "provide
[the warning] to every defendant, without attempting to determine the defendant's
citizenship." Fed. R. Crim. P. 11(b)(1)(O) advisory committee's note to 2013
amendment. Consequently, not only did the district court fail to comply with Rule
11(b)(1)(O)'s plain text, but the district court also violated the Note's directive by
asking Mr. Golestan if he was a citizen before apparently deciding *not* to give the Rule
11(b)(1)(O) warning. *See* JA430.

These erroneous rulings formed the foundation for the district court's decision
not to permit Mr. Golestan to withdraw his plea. In addition to the district court's
flawed legal premises, consideration of the *Moore* factors support withdrawal of Mr.
Golestan's plea. As explained in greater detail with regard to the *Ciminelli* argument,
Mr. Golestan has presented credible arguments regarding his legal innocence.
Moreover, his plea was clearly unknowing, as the district court failed to give Mr.
Golestan the advice mandated by Rule 11(b)(1)(O) and counsel conceded she did not
do so either. *See* JA451 ("He also was not advised by counsel … about the possibility
of denaturalization as a result of his guilty plea."). Mr. Golestan filed his motion
swiftly, as he discovered the denaturalization consequences of his plea in January
2023, *see* JA470, and filed his first motion to withdraw his plea within three months of
that discovery. *See* JA450-452. He did not have the close advice of competent counsel

on this issue, as discussed in greater detail below. Withdrawal would not prejudice the government or waste judicial resources because justice is not served by preserving convictions of an individual who would not have pleaded guilty had he known the significant immigration consequences of his plea. *See Schneiderman*, 320 U.S. at 122 ("It would be difficult to exaggerate [citizenship's] value and importance."). This is particularly true given Mr. Golestan's status as an Iranian national—a country his family fled when he was a child—and his significant connections to the United States.

While this Court has not addressed Rule 11(b)(1)(O) previously in a published decision, this Court need not write on a blank slate. In *United States v. Ataya*, 884 F.3d 318 (6th Cir. 2018), the Sixth Circuit confronted this exact question. There, Ataya pleaded guilty to conspiracy to commit healthcare fraud and wire fraud in violation of 18 U.S.C. § 1349. *Ataya*, 884 F.3d at 320. Ataya, a Syrian national, became a naturalized American citizen following the conduct giving rise to the conviction. *Id.* at 321. The district court, however, did not advise Ataya of the immigration consequences of his plea as required by Rule 11(b)(1)(O). *Id.*

On plain error review, the Sixth Circuit concluded the district court "did not comply with Rule 11(b)(1)(O)." *Id.* at 324. Citing the Advisory Committee's Note, the Sixth Circuit found "Rule 11(b)(1)(O) mandates that the district court provide this 'generic warning' to '*every defendant*, without attempting to determine the defendant's citizenship.'" *Id.* (quoting Fed. R. Crim. P. 11(b)(1)(O) advisory committee's note to 2013 amendment) (emphasis in original). The Sixth Circuit further found that the

31

error warranted reversal because Ataya "articulated a strong, and very reasonable, aversion to his former homeland of Syria" and he "is the father of three minor children who reside in the United States, is an active parent, and is the family's breadwinner." *Id.* at 325. The significant risk Ataya faced from denaturalization demonstrated that there was a reasonable probability he would not have pleaded guilty had he been given the warning mandated by Rule 11(b)(1)(O). *Id.*

This Court should follow *Ataya* and conclude that the district court's failure to advise Mr. Golestan that there could be immigration consequences of his guilty plea warrants withdrawal of that plea. Like Ataya, Mr. Golestan faces significant and severe denaturalization consequences as a result of his plea. Like Ataya, Mr. Golestan has no ties to his native country of Iran and has multiple family members, including children, who reside in this country. Unlike Ataya, Mr. Golestan preserved his claim in the district court. If Ataya's circumstances warranted reversal on plain error review, then Mr. Golestan's preserved claim certainly passes muster. This Court should vacate the district court's judgment and remand so that Mr. Golestan can withdraw his guilty plea.

**D.    Defense counsel's failure to advise Mr. Golestan of the immigration consequences of his guilty plea constituted ineffective assistance of counsel.**

Defense counsel was ineffective for failing to advise Mr. Golestan of the immigration consequences of his plea. Ordinarily, this Court will not review claims of ineffective assistance of counsel until collateral relief is sought "to benefit from a fully

32

developed record." *Freeman*, 24 F.4th at 331. Where the ineffectiveness "conclusively appears in the trial record itself," though, this Court can review the claim on direct appeal. *United States v. Mandello*, 426 F.2d 1021, 1023 (4th Cir. 1970). "This is one of those cases." *United States v. Fisher*, 477 F.2d 300, 302 (4th Cir. 1973).

### 1.      Defense counsel's performance was deficient.

Defense counsel performed deficiently. *Padilla* directs defense attorneys to advise defendants of the immigration consequences of their pleas. *See Padilla*, 559 U.S. at 374 ("[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation."). Mr. Golestan faces a risk of deportation as a result of denaturalization and further removal proceedings. He did not receive any advice regarding that risk from defense counsel. That failure to give advice constituted deficient performance.

Moreover, defense counsel, who represented Mr. Golestan at his plea and in his motion to withdraw that plea, conceded her performance was deficient through her filings on Mr. Golestan's behalf seeking to withdraw his guilty plea. In the initial motion to withdraw the plea, she asserted "[Mr. Golestan] was not advised by counsel … about the possibility of denaturalization as a result of his guilty plea." JA451. In the subsequent motion to reconsider the denial of the withdrawal motion, she went into greater detail and argued that "[n]ot being advised of this grave consequence contravenes the Supreme Court's holding in *Padilla*." JA467. Consequently, this Court

33

need not wait for factfinding—defense counsel has admitted she did not give the advice required by *Padilla*.

The only court to address similar claims has reached inconsistent results. In an unpublished opinion, the Second Circuit concluded defense counsel was deficient for advising a defendant that she "did not have to worry" about immigration consequences of a plea because she was a citizen even though that plea subjected the defendant to potential denaturalization and removal. *Rodriguez v. United States*, 730 F. App'x 39, 41 (2d Cir. 2018). In a published decision, however, the Second Circuit—over Judge Carney's lengthy dissent—found the failure to advise a defendant of denaturalization consequences of a plea did not constitute deficient performance. *Farhane v. United States*, 77 F.4th 123 (2d Cir. 2023). Judge Carney argued *Padilla*'s holding extended to the denaturalization consequences of a plea and that "[t]he failure to advise [Farhane] as to the risks of denaturalization and deportation were objectively unreasonable." *Id.* at 151 (Carney, J., dissenting). Mr. Golestan urges this Court to adopt Judge Carney's reasoning to conclude that *Padilla* requires defense attorneys to advise naturalized citizens of the possibility of denaturalization as a result of their pleas. Since defense counsel did not give that advice to Mr. Golestan, her performance was deficient.

## 2.     Defense counsel's deficient performance prejudiced Mr. Golestan.

A defendant can demonstrate prejudice under *Padilla* by establishing that there is a reasonable likelihood that either "he could have negotiated a plea agreement that avoided immigration consequences" or "absent his counsel's error, he would have gone to trial instead." *United States v. Swaby*, 855 F.3d 233, 241, 243 (4th Cir. 2017). Mr. Golestan cannot establish the former form of prejudice at this point because there is no evidence in the record regarding plea negotiations. It is possible Mr. Golestan could have negotiated a plea agreement with the government which contained an agreement by the government not to pursue a § 1425 prosecution.[2] It is also possible Mr. Golestan could have negotiated a plea to the third count of the indictment only, as the indictment alleged that count of wire fraud occurred on April 13, 2018, which is two months after he became a naturalized citizen. Since defense counsel did not recognize the denaturalization consequences of Mr. Golestan's plea until well after he had entered the plea, however, the possibility of such agreements were not explored.

Mr. Golestan can readily establish the latter form of prejudice, though, as that inquiry requires a review of "a defendant's decisionmaking, which may not turn solely

---

[2] The government did not rule out seeking denaturalization of Mr. Golestan in its response to his motion to reconsider the denial of his withdrawal motion, so it is unclear whether the government would be willing to make that bargain. *See* JA487 ("Whether civil denaturalization proceedings may be initiated at some point in the future, and whether any such denaturalization proceedings might ultimately result in deportation or removal, is entirely speculative.").

on the likelihood of conviction after trial." *Lee*, 582 U.S. at 367. Mr. Golestan was already in the midst of trial when he entered the guilty plea. Consequently, Mr. Golestan had demonstrated he was not afraid of trial, and his motion to withdraw his plea demonstrates he would have been willing to take his case to trial over the denaturalization consequences of conviction. Moreover, "[t]here is no reason to doubt the paramount importance [Mr. Golestan] placed on avoiding" denaturalization and potential removal. *Id.* at 370. Mr. Golestan had "strong connections to the United States," *id.*, as both his parents, one of his siblings, and both of his children reside in the United States. *See* JA645-646. Additionally, "there is no indication that [Mr. Golestan] had any ties to [Iran]; he had never returned there since leaving as a child." *Lee*, 582 U.S. at 370; *see* JA645. Mr. Golestan's potential denaturalization and removal is even more significant considering that he is an Iranian national and his family fled the country decades ago; a return to Iran could have horrific consequences for him. Accordingly, "it would [not] be irrational for a defendant in [Mr. Golestan's] position to reject the plea offer in favor of trial" because the potential of acquittal would have forever eliminated the possibility of denaturalization. *Lee*, 582 U.S. at 371. The appropriate remedy is vacatur of Mr. Golestan's plea and remanding for a new trial.

36

**IV.  Micfo's guilty plea must be vacated where there was no valid authorization for its entry.**

## STANDARD OF REVIEW

If the guilty plea was constitutionally infirm ab initio, for example, because it was the product of ineffective assistance of counsel or was not knowing and voluntary as to the defendant for whom the plea is entered, then the plea should be set aside, and this Court reviews de novo whether a plea was constitutionally infirm. *United States v. General*, 278 F.3d 389, 393 (4th Cir. 2002); *United States v. Guerra*, 401 F. App'x 746, 748 (4th Cir. 2010); *United States v. Austin*, No. 20-4521, 2021 WL 5984902, at *1 n.1 (4th Cir. Dec. 16, 2021) (addressing question of whether, where a party lacks the opportunity to object—a circumstance Micfo claims here, where its authorized representative was not present for the plea proceeding—plain error review is not the proper standard of review and instead plenary review should be afforded).

## DISCUSSION

The Federal Judicial Center's Benchbook for District Court Judges recommends that a corporate representative's authority to plead guilty be the first thing the judge confirms in a plea colloquy for an organizational defendant. Fed. Judicial Ctr., Benchbook for U.S. District Court Judges § 2.02 at 75 (6th ed. 2013), https://www.fjc.gov/sites/default/files/2014/Benchbook-US-District-Judges-6TH-FJC-MAR-2013.pdf. It suggests more than confirming the defendant's presence as a

representative and advises the court to verify even that a board of directors has passed a valid resolution permitting the plea. *Id.*

At the plea hearing in this case, Micfo lacked the presence and authorization of any person with a controlling interest or authority. Trial testimony by a government witness at the terminated bench trial that preceded the guilty plea showed that a bankruptcy trustee had assumed control of Micfo and accordingly amended its operating agreement to conform to the trustee's controlling interest. JA523-524. The codefendant, Mr. Golestan, confirmed these dispositive facts at the inception of the Micfo plea colloquy. JA438. Mr. Golestan had been, by order of the bankruptcy court, divested of any ownership interest and had lost his controlling position as Executive Director. *Id.* In the face of these undisputed facts, the district court's decision to ask Mr. Golestan to confirm his authority over the company was unwarranted and misdirected. Nor did the district court ask defense counsel to provide any explanation for giving authorization to Mr. Golestan in this context.

Given the overwhelming and undisputed evidence that Mr. Golestan was in no way authorized to bind Micfo in a matter so critical as the entry of a guilty plea to twenty felony charges, the district court's failure to ask any questions of counsel regarding how Mr. Golestan could be authorized to make the fundamental plea decision for the company was error. Similarly, the district court's mistaken suggestion to Mr. Golestan personally that Mr. Golestan had the authority to enter a guilty plea for Micfo despite having been divested of his ownership interest and his Executive

Director position, with Mr. Golestan relegated to an employee status as manager, JA438, failed to comply with fundamental concerns for the voluntariness and knowing entry of a guilty plea by the corporate defendant.

Determining the capacity of the defendant to enter a guilty plea is not only a component of Fed. R. Crim. P. 11, but a fundamental component of the due process guarantees applicable to the entry of a guilty plea. The bankruptcy trustee, not Mr. Golestan, had sole authority to bind the company in matters such as a guilty plea that implicates extreme, mandatory financial obligations adversely affecting the interests of the trustee and the ability of the trustee to comply with the obligations of her appointment. *See*, *e.g.*, *In re Rothstein Rosenfeldt Adler, P.A.*, No. 11-61338-CIV, 2011 WL 2620187, at *2 (S.D. Fla. July 1, 2011) (explaining that where criminal charges result in bankruptcy of entity affiliated with defendant, trustee was "charged with marshaling assets").

The entry of a guilty plea in a fraud case such as the present case automatically requires imposition of three different mandatory financial penalties (and at least one additional potential financial obligation): (1) a special assessment of $8,000 ($400 for each of the 20 counts, *see* JA619); (2) mandatory forfeiture of any proceeds derived directly or indirectly from the fraud (pursuant to 18 U.S.C. § 981, made applicable by 18 U.S.C. § 2461); and (3) mandatory restitution to the fraud victim(s) (pursuant to 18 U.S.C. § 3663A, the Mandatory Victim Restitution Act); and (4) a potential fine of

$250,000 per count, with a total of possible fine amounting to $5 million. *See* 18 U.S.C. § 3571(b)(3).

The district court's conclusion that the plea should be accepted despite the undisputed showing that the real person in control and true owner of Micfo had not had the opportunity even to participate in the plea proceeding was fundamental error. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (recognizing rights and obligations of trustee; "Chapter 7 authorizes a discharge of prepetition debts following the liquidation of the debtor's assets by a bankruptcy trustee, who then distributes the proceeds to creditors.").

A guilty plea is a waiver of substantial constitutional rights. Accordingly, the defendant must be informed of the various constitutional rights that it is waiving by entering such a plea. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969). As discussed above, Micfo was never informed of the constitutional rights it was waiving, because its court-authorized trustee had no involvement in the plea decision, nor was any claim made by counsel that there had been a delegation of authority in this matter to Mr. Golestan, even if such a delegation would not otherwise automatically be viewed as contrary to the trustee's independent obligations.

The district court discussed these rights with Mr. Golestan only. The trustee was not present, nor was there any advance notice of a plea proceeding which occurred in the middle of trial after counsel expressed concerns about proceeding with the asserted trial defense. A guilty plea must be an intelligent, knowing, and

40

voluntary act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). "A plea is voluntary in a constitutional sense if the defendant receives real notice of the charge against him and understands the nature of the constitutional protections he is waiving." *United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005). The defendant must understand the nature of the charges; and the defendant must know and understand the consequences of the guilty plea. *Id.* None of this occurred as to Micfo in this case given the absence of any authority of Mr. Golestan to act on its behalf.

There was no justification for an assumption that Mr. Golestan's doubly-diminished position as a business manager authorized him to waive Micfo's fundamental legal rights and incur overwhelming financial obligations and forfeitures. In *United States v. Cocivera*, 104 F.3d 566 (3d Cir. 1996), the government prosecuted an individual and six corporations of which the defendant was the chief executive officer and 50% owner. The defendants' attorney withdrew, and the court appointed an experienced trial lawyer to represent all the defendants. *Id.* at 568. The trial court then authorized the individual defendant to terminate the appointed lawyer's representation. On appeal, the Third Circuit found the individual's waiver of his right to counsel was made knowingly and voluntarily and affirmed the individual's convictions. However, the court of appeals reversed the corporations' convictions even though was defendant was the chief executive officer and 50% owner. The Third Circuit held that nothing in the record demonstrated that the CEO was authorized by

the corporations to take over decision-making for the companies. *Id.* at 571. The Third Circuit held, "It may be true, as the government argues, that Cocivera effectively ran the corporations and was their alter ego, but that does not mean that he had the right to decide alone to represent the corporations." *Id.*

In Micfo's case, nothing in the record supports the conclusion that the trustee in any way abandoned the controlling authority conferred by the bankruptcy court, including sole authority to make substantial financial decisions, such as entry of a guilty plea that mandated forfeiture (including a money judgment of $3,375,104, *see* JA624), restitution, special assessments, and fines to which the plea exposed Micfo.

Because no one other than the defendant Micfo could validly enter a guilty plea that bound that entity, and because only the trustee could authorize such a plea, the plea should be vacated.

## **CONCLUSION**

For the reasons stated, Mr. Golestan and Micfo respectfully request that this Court vacate their pleas and judgments and remand for further proceedings.

Respectfully submitted, May 2, 2024

s/ Jeremy A. Thompson
Jeremy A. Thompson
Assistant Federal Public Defender
Federal Public Defender's Office
1901 Assembly Street, Suite 200
Columbia, South Carolina 29201
Telephone: 803.765.5077

**Counsel for Appellant**
**Amir Golestan (23-4583)**

s/ Richard C. Klugh
Richard C. Klugh
LAW OFFICE OF RICHARD C. KLUGH
40 NW 3rd Street
PH1
Miami, FL 33128
305-536-1191
klughlaw@gmail.com

**Counsel for Appellant**
**MICFO, LLC (23-4592)**

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      The foregoing brief has been prepared in a proportionally spaced typeface using Microsoft Word, Garamond, 14-point.

2.      Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, the foregoing brief contains <u>9,831</u> words.

3.      I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief with the word or line printout.


<u>s/ Jeremy A. Thompson</u>
Assistant Federal Public Defender